May it please the Court, Martin Buchanan appearing for Junior Hillbroom. I was going to give a background of the case, but I see everybody's left, so I'll just dive right in. Well, you can have a dress rehearsal right now. Well, I'll just move right into the personal jurisdiction issue, Your Honor. All right. The district court in this case found that there was no personal jurisdiction over the defendant Barry Israel in the Commonwealth of the Northern Mariana Islands. And in making that ruling, the district court concluded. It's in Saipan. Saipan is in the Commonwealth of the Northern Mariana Islands, correct? Yes. Do you know what happened on Saipan? In World War II, there was a significant event there, I believe. Okay. All right. The district court, in finding no personal jurisdiction, ruled that the Calder effects test requires conduct by the defendant that targets a resident of the forum state. And because there was no dispute that my client, the plaintiff Junior Hillbroom, was never a resident of the CNMI, the district court considered that to be dispositive and treated it as the end of the matter. And that was clearly incorrect under Keaton, correct? That was incorrect under Keaton v. Hustler Magazine. No question about it. Keaton decided the same day as Calder v. Jones involved a case in New Hampshire. The defendant, Hustler Magazine, had minimum contacts with New Hampshire. But the plaintiff was not a resident of New Hampshire. The plaintiff was a resident of New York. And the Supreme Court says, in essence, we've never required the plaintiff to have minimum contacts in order to assert personal jurisdiction over a defendant who does. And so here's my question. I agree with you on that. The district court made a mistake by saying that your client had to reside in the Mariana Islands. What test do we apply when the underlying argument is that this was a fraudulent contract? Do we apply the purposeful availment test? Do we apply the purposeful direction test? Is there any difference between the two? And is there any difference between how the case comes out if we apply one or the other? I think there's no difference in the way the case comes out. And this Court has said you can actually apply a combination of the two weighing minimum contacts under both tests. So, frankly, I don't think it makes that much difference, Judge, under either a purposeful availment or a purposeful direction analysis or some combination of the two. We have at least established our prima facie case of jurisdictional facts. So let me kind of go down the three-factor test that the Court uses for both of those tests, both of those analyses. Number one, Mr. Israel did purposefully direct his activities at the CNMI, and he purposefully availed himself of the privilege of conducting activities there. And he did so by actually moving to the CNMI for five years, devoting his entire legal practice to this $550 million estate that was in the CNMI courts. But tell us, you know, some people may not know some of the background. Sure. Now, Hillbroom, he was the founder of DHL, right? Yes, his name was actually Hillblom, but, yes, correct. What? The dad's name was Hillblom. The son's name is Hillbroom. That's close enough. Yeah, all right. Okay. And he died.  And he left no will. He left a will, Your Honor, I believe, but my client was not named as an heir in the will. My client was conceived as a result of a relationship that Mr. Hillblom had with a 16-year-old girl in Palau. And he asserted his rights as an heir, even though as a pretermitted heir, even though he was not named in the will. And ultimately, it was determined that he had a right to a 15 percent interest in Mr. Hillblom's estate. In the $400 million estate. I believe it was over $500 million. Correct. Yes. So Mr. Hillblom, the senior, was a resident of Saipan at the time he died in an airplane crash. The probate case was filed in the CNMI. It was litigated over many years in the CNMI. And Mr. Israel, the defendant here, was counsel. He was the Commonwealth of Northern Marianas. Correct. Okay. So Mr. Israel, the defendant here, became admitted pro hoc vicee. He moved from California to the CNMI to devote his entire practice to litigating that CNMI probate case and also related ancillary litigation that was pending both in the CNMI state courts and the CNMI federal courts. What interest did he have in the recovery, if any? Well, that's the issue. That's the underlying issue in this lawsuit. And what we're contesting — What did he claim? He's claiming he and his co-counsel are entitled to a 56 percent contingency fee under an amended retainer agreement that they executed, that the prior retainer agreement with my client's guardians was for 38 percent. So the dispute of the underlying lawsuit putting aside the jurisdictional issue has to do with the increase of the contingency fee from 38 percent to 56 percent. So continuing with Mr. Israel — Where does he live now? Mr. Israel now lives in Vietnam. He lives in Vietnam. Correct. And then where did he live before then? Well, he was a lawyer in the United States for several decades. He had his practice in Washington, D.C. He also was a member of the California State Bar, practiced law there, and then moved to Saipan in the Commonwealth of Northern Mariana Islands to devote his practice to this very valuable estate matter. And he lived — For this one case. For this one case and related litigation. And he lived there for five years. He was a resident of Saipan for five years. He then moved, he says, to Thailand and eventually Vietnam. The point is, he had extended — Where does he live now? He lives now in Vietnam. And Mr. Hillbrom lives where? Mr. Hillbrom lives in the mainland United States. As of the time of the filing of the complaint, he was living in Idaho. No, he lives in San Francisco. But, you know, I'm actually not sure where his current exact residence is. I know at the time of the complaint it was in Idaho. But this is your client. You don't know where they live? I don't know whether he's moved since we filed the complaint. And trial counsel is in greater touch with him than I am. Oh, I see. Okay. Yes. All right. So the point is, Mr. Israel had extensive and prolonged contacts with the CNMI, not only by living there, but by practicing in its courts for an extended period of time. And those contacts, those forum-related contacts, were directly related to the claim that we're making in this case regarding the contingency fee that he claims he's entitled to for those efforts. And if you look at the amended retainer agreement itself, which is in the record at pages 130 to 135, all you have to do is to look at the terms of the retainer agreement to conclude clearly that this claim that we're making here arises out of and directly relates to Mr. Israel's CNMI-related activities. The retainer agreement by its terms expressly requires Mr. Israel to continue representing Junior's interests in the CNMI probate case, including maintaining a friendly but controlling relationship with the special administrator of the CNMI estate and the liquidating trustee. The retainer agreement requires Mr. Israel to continue representing Junior's interests in related CNMI litigation, and it names by case name a pending litigation in the CNMI courts that involved a claim of malpractice against the original firm, the Carl Smith firm that represented the executor of the estate. So my point is this retainer agreement required Israel to provide legal services in an ongoing pending litigation in the CNMI over this firm's malpractice, the Carl Smith case. The amended retainer ---- You ever lived in Saipan? I have never been to the Saipan, let alone lived there. All right. The retainer agreement also required Mr. Israel to continue representing Junior's interests in connection with property and investments that were located in the CNMI, and those would include Junior's interest in the unliquidated shares of the Bank of Saipan, Junior's interest in a property known as the San Vicente property located in Saipan, also another lease known as the NAOG lease in Saipan, and finally, this amended retainer agreement giving Mr. Israel and his co-defendants a 56 percent contingency fee, it gave him a right to a greater share of the proceeds of the sale of all of those assets located in the CNMI, a greater right to the share of the proceeds of the Carl Smith litigation that was eventually settled. So not only does this amended retainer agreement require conduct in activities and litigation in the CNMI, but by a term that gives Mr. Israel a greater right to investments, property, and litigation proceeds located in the CNMI. So that's factor number two. Factor number three is really the question of reasonableness. Is it reasonable to assert jurisdiction over Mr. Israel in the CNMI? Does that comport with fair play and substantial justice? And I would suggest what the Due Process Clause forbids is hailing someone into court based on random, attenuated, or fortuitous contacts with the forum state. Mr. Israel's contacts with the CNMI were anything but. They were prolonged, they were purposeful, and they were directly related to the substance of this litigation. And he's got a big stake in it, right? Pardon me? He has a big stake in it. He has a huge stake in it, Your Honor. Okay. So you'd better save some time. I will do that. Thank you very much. May it please the Court, William Mills, on behalf of Barry Israel. This case is actually, while prolonged and significant for the people in the Marianas Island, it's a relatively simple question of whether or not Mr. Israel can be called there under for specific jurisdiction. This is not an issue. And most of the serial events that Mr. Buchanan mentioned are all related to conduct, which is undisputed, that occurred in the CNMI prior to 2001. The only events that you can think of. So in your view, where can your client be sued? All of the events that occurred as alleged in this complaint occurred in Guam, Your Honor. So you would be content in this case if we transferred the case to Guam? I will be candid with you, Your Honor. We think that Mr. Israel has, that Guam has no greater personal jurisdiction over Mr. Israel than CNMI. But this case belongs in Guam. Excuse me? You think the case belongs in Guam? Yes, sir. You would argue in Guam as well that there's no personal jurisdiction? We would, sir. We would, Your Honor. Okay. So you can't, I'm asking, then you haven't answered my question. Tell me where in the purview of the United States your client can be sued for this allegedly bad conduct. Based on the existing law, Your Honor, I'm not sure there is a site that he can be sued. Nowhere. Nowhere. Nowhere? Now. I'd like to sugarcoat it, Your Honor. How is he going to get his money? Well, he's already collected the money. This is not an issue of collection, Your Honor. This is an issue of trying to get the money back from him based on the allegation that he committed some crime. This is straight. There's an allegation in this case that your client engaged in bad behavior while he was located in Guam. He's now decamped to Vietnam, and your position is he's outside the purview of justice in the United States because he's fled to Vietnam. Is that your position? Well, no, that's not my position at all, Your Honor. First of all, he's not fled to Vietnam at all. He was assigned by the trustee in this case to conduct business of the trust in Vietnam, and he's been doing that since 2000. But I guess he could get a letter. Not soon, but in the United States. If the court had jurisdiction there, certainly. Well, but your position – see, if you came here and said there's jurisdiction in Guam and the case ought to be transferred there, I'd understand that position. I'm not sure I'd buy it, but I'd understand it. But your position is there's jurisdiction nowhere, right? Well, our position is that the rules of personal jurisdiction do not permit Mr. Israel to be sued either in Sinai or Guam. Even though the underlying conduct occurred in Guam? In other words, this amended retainer agreement was entered into in Guam, was it not? Mr. Lujan, the other co-counsel, signed for Mr. Israel in Guam. And as far as I know, the other signatures – I don't know where Mr. – where Junior Hillbloom was executed the agreement, but I do know that the defendants executed the agreement in Guam. So we're in – we're in, you know, the case rises out of the Northern Mariana Islands district court. She said there was no personal jurisdiction using specific jurisdiction. Correct. And you just heard the argument why she was wrong, why the district court was wrong in its ruling. So why is – why – I don't understand why there isn't purposeful availment, at least here. Well, purposeful availment, all of the conduct in this case has to focus, based on the law, on the cases, on whether there are jurisdictionally relevant facts and the location of those jurisdictionally relevant facts. There are no jurisdictionally relevant facts in the CNMI relating to conduct alleged in the complaint. The conduct alleged in the complaint is a fraud on the plaintiff or the appellant. That fraud relates to conduct that just did not occur in CNMI. There is – Well, this had a long relationship with it. This whole thing had a very long relationship with the CNMI. Sure. And if this had been raised in 2004 or 2005, we would have serious issues about general jurisdiction. But there doesn't seem to be any dispute that there isn't sufficient facts for general jurisdiction. The fact that he was a resident of CNMI for five years prior to 2000 is not in dispute. He was technically a resident of CNMI after 2000 until 2002, but did not – was not physically present at CNMI at any time after 2000. But I mean, he went to the CNMI – he went there to represent Junior, the plaintiff in this case, in all the probates. That's not – he represented the trust, Your Honor. The trust. But it was for the whole purpose. All of the probate litigation or the primary probate litigation was in the CNMI. In the superior court in CNMI. CNMI.  And there was some district court process in CNMI as well. All of that – all – that case was settled, I believe, in 1999. And everything was over. We then enter into the – But he continued to represent him, didn't he, the plaintiff here? Not in CNMI. Where did he represent him after that? In Guam. Everything after – everything after the probate matter was settled in CNMI took place in Guam? Correct. There was no further – So why isn't he still in Guam? That's my understanding, Your Honor. So it's a – you know, if we – as we catalog those various items of conduct, they relate to conduct that occurred in CNMI before the CNMI probate closed, except for two things. He was a director of the Saipan Bank until 2002, I think, March. And he was technically a legal resident of CNMI until the end of 2002. Thereafter, he formally became a resident of Thailand. And so there's really no dispute about where he was and what he was doing under the circumstances. The question is, the conduct that the court is focused on, does it have any relationship to the charges alleged against him in the complaint? And the answer to that is no. He's been charged with fraud. Well, let me ask you about that. Let me ask you about that. As I understand it, this amended retainer agreement, in effect, gave your client an increased contingency fee with respect to the collection of assets, correct? Correct. That's right. And you're saying, well, he collected all those assets before the retainer agreement was entered into? That's not at all what I'm saying. Remember the – Well, but he collected some of them before the retainer agreement was entered into? I believe so. And in addition, the new retainer agreement that we're talking about, 50% agreement, had some retroactivity, which permitted him to collect money. That's what I'm talking about. It had a retroactive effect to some assets already collected. I believe that's correct. And those assets were collected in the Mariana Islands, were they not? I think technically they were, yes. Oh. So therefore, if we're talking about his entitlement to fees under an agreement that was going to recompense him for collecting assets in the Mariana Islands, why isn't there significant contact with the Mariana Islands? Well, because he's not being charged with the collection activity. He's not being charged in the complaint for breach of fiduciary duty and legal malpractice. He's being charged for committing a fraud that entitled him to that money, but not to – I mean, there doesn't seem to be any charge at all that relates to the quality of the work or the substantial amount of money that was actually collected. The question is, did he mislead the plaintiff about this? So when he collected those monies in the Mariana Islands, did he take his little fee out of that? I presume so, Your Honor. I presume so. You don't know? His 24% fee? I'm certain that he got his money. I don't – the money came from all over the world. So to say that I could specifically trace specific dollars to the Marianas, I don't know, but I presume that money came out of the Marianas. So did I know your father? You did, Your Honor. And you may still, actually. What? He's still – he's fine and gives his regards. He's still alive? Oh, yes. How old is he? Eighty-five in November. He was on the city council for a long time. That's correct, Your Honor. Okay. If you have no further questions, I'm prepared to submit, Your Honor. Thank you very much. Thank you. I'd just like to very briefly correct one factual statement. The notion that as soon as the estate was fully settled, everything moved from CNMI to Guam is not accurate. The final global settlement in the CNMI probate case left certain matters open and within the jurisdiction of the CNMI court. Those were, A, the unliquidated assets, of which there were a number including in the CNMI. Well, let me ask you, what difference would it make to your client, whether it's Guam or Saipan? Well, we believe there was jurisdiction in either one. We currently have a case in the CNMI against Mr. Lujan, the other lawyer involved, against the trustee, and that case is ongoing in the CNMI. It hasn't been stayed pending this appeal. So we believe the most efficient thing to do is to reverse this judgment, have it go back, and have that case join the one that's pending already in the CNMI where there's been extensive discovery, and litigate this efficiently in a forum where there is personal jurisdiction. We tried California. Mr. Israel found a motion to dismiss for lack of jurisdiction there. We got thrown out. Judge Wright said either the CNMI or Guam would be suitable alternatives. We decided CNMI was the most suitable alternative. That's where the probate proceedings were. That's where most of the activity occurred. And even after this settlement, that's where things continued to happen. The other thing that the CNMI global settlement left open was this ongoing litigation known as the Carl Smith litigation in the CNMI courts, and if you look at Mr. Israel's own declaration, he does not dispute that he was litigating that case after the CNMI estate closed. It continued to be litigated. If you look at page 296 of the supplemental excerpts of record, you'll see that the settlement proceeds from that Carl Smith litigation do not start to come into the trust until October, November 2001. So that's significantly after the CNMI estate closed. In addition, you've just heard that Mr. Israel was a director of the Saipan Bank until March 2002. I'm just curious about what your problem is with Guam. Guam is heavily developed now, a lot of flights in and out of Guam. Sure. And I mean, I think there's jurisdiction in both venues. Now, I don't know what Mr. Weibel, the trustee, would say if we sued him in Guam. He might assert no personal jurisdiction. You just heard Mr. Israel say he was going to assert no personal jurisdiction in Guam as well. We're just looking for some place to have our case heard, Your Honor. We've tried California, and we're told Guam or the CNMI. The CNMI is where most of the activities that these attorneys conducted occurred, and it has to do with an estate in the CNMI, with property in the CNMI. I'm just talking to you there. Yeah. All right. Unless there are further questions. I've never been to Saipan, but Guam is a nice place. I'm sure it's a nice place. The only difference from, I think, from Saipan, the appeal comes to the Ninth Circuit. If it's in Guam, then we send over a special appellate court. Well, I've never been to either one. So anyway, we would ask the court to reverse the district court's finding that there's no personal jurisdiction over Mr. Israel and let the case return to the CNMI where the other related cases. Guam would be a good place to invest your money now. You know why? No. You don't? I do not. Because we're moving out of Okinawa, and Guam is going to be our bastion, and we're spending billions of dollars putting in a brand-new infrastructure. But I think the windsurfing is better in Saipan. I know it is. All right. Thank you. Thank you. All right. Thank you.
judges: Pregerson, Paez, Hurwitz